CORLEY v DETROIT BOARD OF EDUCATION

Docket No. 218528. Submitted January 9, 2001, at Detroit. Decided May 15, 2001, at 9:05 A.M. Leave to appeal sought.

Patricia M. Corley brought an action in the Wayne Circuit Court against the Detroit Board of Education, Joseph Smith, and Barbara Finch, alleging discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*, breach of contract, and intentional infliction of emotional distress. The court, Wendy M. Baxter, J., granted summary disposition in favor of the defendants, finding, in part, that the alleged adverse employment action against the plaintiff that was based on the plaintiff's former intimate relationship with Smith, her supervisor, did not present a cognizable claim of sex discrimination under the act. The plaintiff appealed.

The Court of Appeals *held*:

1. Adverse employment action against an employee based on the employee's former intimate relationship with the employee's supervisor presents a cognizable claim of sex discrimination under the act. The court erred in granting summary disposition in favor of the defendants with regard to the plaintiff's sexual harassment claim. That part of the court's order must be reversed and the matter must be remanded for further proceedings.

2. The plaintiff established sufficient facts for her claims of sexual harassment and hostile work environment to survive a motion for summary disposition.

3. The plaintiff failed to present sufficient facts to support her theories of intentional sex discrimination or disparate treatment. Summary disposition of those claims of sex discrimination was proper and must be affirmed.

4. Reasonable minds could not find that the defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. The court did not err in dismissing the claim of intentional infliction of emotional distress.

5. The court properly dismissed the breach of contract claim, which alleged an implied contract, on the basis that the claim con-

cerned subject matter expressly covered by the plaintiff's union contract.

Affirmed in part, reversed in part, and remanded.

CIVIL RIGHTS — SEX DISCRIMINATION — ADVERSE EMPLOYMENT ACTIONS.

Alleged adverse employment action against an employee that is based on the employee's former intimate relationship with the employee's supervisor presents a cognizable claim of sex discrimination under the Civil Rights Act (MCL 37.2101 *et seq.*).

*Ernest L. Jarrett,* for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Christine D. Oldani, Kenneth L. Lewis,* and *Venessa Peterson Williams*), for the defendants.

Before: NEFF, P.J., and HOLBROOK, JR., and JANSEN, JJ.

NEFF, P.J. Plaintiff appeals as of right the trial court's grant of summary disposition in favor of defendants on her claims of sex discrimination, breach of contract, and intentional infliction of emotional distress, following the termination of her adult education job with defendant Detroit Board of Education. We affirm in part, reverse in part, and remand.

I

This appeal presents an issue of first impression regarding whether alleged adverse employment action against an employee based on the employee's former intimate relationship with the employee's supervisor presents a cognizable claim of sex discrimination under the Civil Rights Act (CRA), MCL 37.2101 *et seq.* We conclude that it does, and, therefore, summary disposition of plaintiff's sexual harassment claim in favor of defendants was improper. However, we affirm the trial court's grant of summary disposition in favor of the defendants regarding plaintiff's other

claims of sex discrimination and her claims of breach of contract and intentional infliction of emotional distress.

II

Plaintiff was employed by defendant Detroit Board of Education as a full-time counselor at Cass Technical High School and, following a divorce in 1991, she took an additional part-time position in the adult education program at the Golightly Vocational Center operated by the board. An intimate, romantic relationship developed between plaintiff and her supervisor at Golightly, defendant Joseph Smith, that lasted nearly four years, but ended in 1995, when Smith became involved with defendant Barbara Finch, another Golightly administrator, whom he married in the spring of 1996. Because of plaintiff's past intimate relationship with Smith, problems arose at Golightly between plaintiff, Smith, and Finch. Following the 1995-96 school year, Smith informed plaintiff that her counseling job at Golightly would not be continued.

Following the termination of her adult education position, plaintiff filed a lawsuit alleging discrimination in violation of the CRA, breach of contract, and intentional infliction of emotional distress. In her claims, plaintiff alleged that she was subjected to a hostile work environment, sexual harassment, disparate treatment, and the unlawful termination of her employment because of her gender and her prior relationship with defendant Smith. The trial court initially granted summary disposition in favor of the defendants with regard to all claims except the breach of contract claim against the board and Smith. The court subsequently granted summary disposition in favor of

the board and Smith regarding plaintiff's breach of contract claim, concluding that it was barred by the applicable collective bargaining agreement.

III

This Court reviews a trial court's grant of a motion for summary disposition de novo as a question of law. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). The trial court granted summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(C)(10). motion for summary disposition under MCR 2.116(C)(10) tests the factual basis underlying a claim. *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). We consider all relevant documentary evidence in a light most favorable to the nonmoving party. *Id.*; *Ardt, supra.* Summary disposition under MCR 2.116(C)(10) is proper only when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Summary disposition under MCR 2.116(C)(8) is proper when "the claim is so clearly unenforceable as a matter of law that no factual development could establish the claim and justify recovery." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). In reviewing a motion under MCR 2.116(C)(8), this Court does not act as a factfinder, but, instead, accepts all well-pleaded facts as true. *Radtke, supra* at 373. Statutory construction is also a question of law, requiring review de novo. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995).

A

Under Michigan law, freedom from discrimination in employment because of a person's sex is a civil right. MCL 37.2102; *Chambers v Trettco, Inc*, 463 Mich 297, 309; 614 NW2d 910 (2000). Subsection 202(1)(a) of the CRA provides that an employer may not "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex . . . ." MCL 37.2202(1)(a). Discrimination because of a person's sex includes sexual harassment of the person. MCL 37.2103(i); *Chambers, supra* at 309. The CRA defines sexual harassment to include

> unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
>     *     *     *
>
> (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, . . . or creating an intimidating, hostile, or offensive employment . . . environment. [MCL 37.2103(i)(*i*), (*ii*), (*iii*).]

To establish a claim of harassment under subsection 103(i)(*ii*), generally termed "quid pro quo" harassment, an employee must show

> "(1) that she was subject to any of the types of unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." [*Chambers,*

*supra* at 310-311, quoting *Champion v Nation Wide Security, Inc*, 450 Mich 702, 708-709; 545 NW2d 596 (1996).]

To establish an harassment claim under subsection 103(i)(*iii*), referred to as "hostile work environment" harassment, an employee must prove

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Chambers, supra* at 311, quoting *Radtke, supra* at 382-383.]

In her complaint, plaintiff set forth claims of both "sexual harassment" (presumably quid pro quo sexual harassment) and "hostile work environment." On the evidence presented, we conclude that plaintiff established sufficient facts for her claim to survive a motion for summary disposition under either theory.

B

The threshold issue for a claim of quid pro quo sexual harassment is that submission to or rejection of the proscribed conduct was "a factor in decisions affecting [the plaintiff's] employment . . . ." MCL 37.2103(i)(*ii*); *Chambers, supra* at 317. Because it is undisputed that plaintiff's employment at Golightly was terminated, and because plaintiff averred various actions by Smith and Finch affecting plaintiff's job at Golightly, plaintiff has established a genuine issue

concerning whether the alleged adverse actions were factors in decisions affecting her employment. Thus, we first consider whether plaintiff established a claim of quid pro quo sexual harassment under subsection 103(i)(*ii*).

Plaintiff argues that defendants' adverse actions against her constituted sexual harassment[1] because they were rooted in the reactions of Smith and Finch to a past consensual intimate relationship between plaintiff and Smith, who was plaintiff's supervisor and a department head at Golightly. In her complaint, plaintiff averred that after their breakup, Smith confronted her at work with thinly veiled threats either expressly or implicitly warning her that she would lose her job unless she promised to do nothing to adversely affect his subsequent relationship with Finch. Further, Smith repeatedly raised the issue in the form of threats throughout the school year, despite plaintiff's reassurances that she had no intention of interfering with Smith's relationship with Finch.

Plaintiff, an evening-school counselor, further averred that defendant Finch, a day-school administrator at Golightly, was aware of the former relationship between Smith and plaintiff, and that Finch, through conduct and indirect communications, exhibited hostility toward plaintiff and made her displeasure with plaintiff's regular presence at the school known to plaintiff. Plaintiff testified during her depo-

---

[1] Plaintiff also characterizes these actions as discrimination based on marital status, contending that her status as a single mother was a factor in her harassment because Smith knew that she could not afford to lose her job. However, plaintiff presents only cursory argument on this claim, and we find plaintiff's argument too tenuous to form a basis for relief.

sition that Finch, through Smith, interceded in the directing of plaintiff's employment to impose work conditions specific to plaintiff, such as assigning her a particular desk in the counseling center within Finch's area of responsibility, thus preventing plaintiff from working away from Finch. No one else was given an assigned seat.

In *Barrett* v *Kirtland Community College*, 245 Mich App 306, 322; 628 NW2d 63 (2001), this Court recently held that the CRA does not "prohibit conduct based on romantic jealousy," and therefore no claim of sex discrimination could be made where the male plaintiff alleged that his male supervisor subjected him to adverse employment actions because they were both pursuing a romance with the same female employee. However, *Barrett* can be distinguished from this case in that the defendants' conduct in *Barrett* did not emanate from a prior sexual/romantic relationship between the plaintiff and his supervisor and there was no claim or evidence that the plaintiff was required to submit to sexual harassment as a condition of employment. *Id.* at 319, 323.

Plaintiff's allegations that defendants targeted her for persistent and hostile communications and other adverse actions because they disliked her continued presence in the workplace as Smith's former paramour may reasonably be considered allegations of conduct or communication "of a sexual nature," MCL 37.2103(i)($i$), in that they emanated from the romantic/sexual relationship between plaintiff and Smith. Similarly, plaintiff's allegation that she suffered adverse employment actions and was discharged for reasons stemming from her status as Smith's former girlfriend may reasonably be considered an allegation

that plaintiff's employment was terminated because of her "submission" to Smith's prior romantic/sexual advances.

The Civil Rights Act is a "remedial statute" of "manifest breadth and comprehensive nature . . . ." *Eide v Kelsey-Hayes Co*, 431 Mich 26, 36; 427 NW2d 488 (1988). "[R]emedial statutes are to be liberally construed to suppress the evil and advance the remedy." *Id.* at 34. The provisions of the CRA covering sexual harassment in the workplace should be read to broadly protect an employee against adverse employment action taken by an employer acting in furtherance of personal animosity toward the employee as the result of the employer's sexual advances. Under the circumstances of this case, we conclude that plaintiff has presented a genuine issue of fact concerning whether she was subjected to quid pro quo sexual harassment.

C

With regard to plaintiff's claim of a hostile work environment, we conclude on the same facts that plaintiff presented sufficient evidence for that claim to survive a motion for summary disposition. Our reasoning with regard to quid pro quo harassment applies similarly to establish that plaintiff belonged to a protected group, was subjected to communication or conduct on the basis of her sex, and that the conduct or communication was unwelcome. See *Radtke*, *supra* at 383-385 (analyzing the first three elements of a claim of hostile work environment). Viewing the evidence in a light most favorable to plaintiff, as a female, former girlfriend of her supervisor, plaintiff was the object of unwelcome sexual conduct or com-

munication, in the form of remarks and offensive actions by Smith and Finch. She informed Smith that she considered his actions to be harassment and told him to cease threatening her; plaintiff also expressed her resentment to Finch for complaining about plaintiff.

With respect to the fourth element of a claim of hostile work environment, plaintiff presented evidence to create a genuine issue of fact concerning whether the conduct or communication substantially interfered with her employment or created an intimidating, hostile, or offensive work environment. "[W]hether a hostile work environment existed shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id.* at 394. Plaintiff was subjected to threats, numerous offensive remarks, adverse working conditions, and ultimately replaced as a counselor because of her past relationship with her supervisor.

Finally, plaintiff presented evidence to establish the element of respondeat superior. Plaintiff testified during her deposition that Smith telephoned plaintiff at Cass Technical on the day she was to return to work at Golightly and told her that she was being replaced by another counselor, although her counterpart, a Ms. Watts, was not being replaced. Plaintiff received no other notice that her position at Golightly, which she had had for the past five years, was terminated. On that same day, plaintiff contacted Dr. Lucille Peoples, the Golightly adult education director, concerning the

termination of her employment and whether there was any problem with her work, but plaintiff was not thereafter assigned to a counseling position.

Mindful of the standards by which a court must view the evidence in deciding a motion for summary disposition, accepting all well-pleaded facts as true, MCR 2.116(C)(8), and viewing the evidence in a light most favorable to the nonmoving party, MCR 2.116(C)(10), we conclude that summary disposition of plaintiff's sexual harassment claims was improper. We find no error in the summary dismissal of plaintiff's other claims of sex discrimination. We conclude that plaintiff failed to present sufficient facts to support her theories of intentional sex discrimination or disparate treatment. See *Lytle v Malady (On Rehearing)*, 458 Mich 153, 181, n 31; 579 NW2d 906 (1998) (disparate treatment requires evidence that a female plaintiff was treated differently than a similarly situated male employee); *Schultes v Naylor*, 195 Mich App 640, 646; 491 NW2d 240 (1992) (intentional discrimination requires a showing that the defendant was predisposed to discriminate against persons in the affected class).

IV

We also find no error in the trial court's dismissal of plaintiff's claims of intentional infliction of emotional distress and breach of contract. We conclude that reasonable minds could not differ that the complained-of conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Haverbush v Powelson*, 217 Mich App 228, 234;

551 NW2d 206 (1996). We also conclude that the trial court properly dismissed plaintiff's implied contract claim on the ground that it concerned subject matter expressly covered by her union contract. *Wallace v Recorder's Court of Detroit,* 207 Mich App 443, 446-447; 525 NW2d 481 (1994).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.