Per Curiam.
 

 Plaintiff Patricia Gormely Prince alleged several theories of liability against defendants after the parties’ employment relationship ended acrimoniously. Plaintiff prevailed on her breach of contract claim and her stock valuation claim. She did not, however, prevail on her religious discrimination claim and she cross appeals, raising evidentiary issues with regard to that claim. While defendant MacDonald & Goren, PC., prevailed on its counterclaim against
 
 *188
 
 plaintiff for breach of fiduciary duty, it was sanctioned jointly and severally with defendant Harold MacDonald for litigant misconduct. Defendant Harold MacDonald
 
 [1]
 
 appeals as of right from the order granting sanctions. We affirm.
 

 On May 23, 1996, the day before the scheduled trial date, defendant MacDonald filed a bankruptcy petition on behalf of MacDonald & Goren, P.C. The next morning he informed the trial court about the filing of the petition. According to plaintiff, defendant MacDonald also represented to the court, and convinced the court, that the trial could not proceed against him personally because of the bankruptcy. He then offered a nominal amount in an attempt to settle the case, which amount plaintiff refused to accept. The trial was adjourned.
 

 On May 31, 1996, MacDonald & Goren, P.C., filed a motion to dismiss its own bankruptcy petition, claiming that it unexpectedly received money and the bankruptcy filing was no longer necessary. The bankruptcy court did not grant the motion, but instead dismissed the case because of defects in the filing of the petition, including a failure to include the necessary matrix, schedules, and statements. Plaintiff subsequently moved in the bankruptcy court to reopen the case and make a determination regarding whether the filing was in bad faith. The bankruptcy court denied plaintiffs motion.
 
 [2]
 
 Plaintiff then moved for sanctions in the trial court. A hearing with regard to the sanc
 
 *189
 
 tion motion was held and, after trial in the underlying matter, the trial court issued its findings of fact and awarded sanctions to plaintiff in the amount of $43,203. The trial court stated, in part:
 

 The Bankruptcy Petition was hastily put together by Defendants, the rules were not followed, a limited disclosure was attempted by listing only two of the firm’s creditors, and the Defendants misrepresented the firm’s assets in the Petition. The bankruptcy filing was in bad faith. The permissible and appropriate inferences are that (a) the bankruptcy proceeding was used in an attempt to reach a nominal settlement of this case through misrepresentation, or (b) the bankruptcy was filed to otherwise delay these proceedings, cause increased expense and hardship to the Plaintiff and causing unnecessary burden to this Court, under circumstances where the Defendants had no intention of following through with the bankruptcy.
 

 Further, Defendant Harold C. MacDonald suggested the filing was because of a cash flow problem and because of his firm’s pending eviction. The facts do not support these claims. The Court finds that Defendant’s testimony is not credible. Finally, the Court finds that Defendants deliberately and improperly delayed the trial.
 

 For its wrongful conduct, the Court finds the Defendants’ action is sanctionable.
 

 In sanctioning defendants, the trial court relied on its inherent authority to sanction litigant misconduct.
 
 Cummings v Wayne Co,
 
 210 Mich App 249, 252-253; 533 NW2d 13 (1995). It also noted that courts have inherent power to sanction the bad-faith or vexatious use of collateral proceedings. See
 
 In re Powell Estate,
 
 160 Mich App 704, 718-719; 408 NW2d 525 (1987).
 

 Defendant recognizes that trial courts generally have power to sanction litigant misconduct. He argues, however, that a trial court does not have jurisdiction under circumstances where the litigant mis
 
 *190
 
 conduct involves the filing of a bankruptcy petition.
 
 [3]
 
 We disagree that in circumstances such as those present here, a trial court has no authority to sanction a defendant for engaging in dilatory tactics aimed at interfering with a state court proceeding.
 

 This is an issue of first impression, and we note that there is no law to support preemption of a state court’s right to sanction a defendant for engaging in misconduct in an underlying state-law case. Defendant cites
 
 Koffman v Osteoimplant Technology, Inc,
 
 182 Bankr 115 (D Md, 1995), to support his position that the trial court could not order him to pay sanctions. Our reading of
 
 Koffman
 
 leads to a contrary conclusion.
 

 In
 
 Koffman,
 
 the plaintiff filed an action against the defendant in the district court after several involuntary bankruptcy petitions against the defendant were dismissed by the bankruptcy court. The defendant filed counterclaims for civil conspiracy, abuse of process, and malicious prosecution arising out of the plaintiff’s conduct while the bankruptcy was proceeding. Specifically, the plaintiff had previously filed a district court action in violation of the automatic stay that was in effect because of the involuntary petitions. The plaintiff had also filed an emergency motion for a restraining order and injunction in the bankruptcy court, which motion was allegedly supported by a false affidavit.
 
 Id.
 
 at 119.
 

 The plaintiff argued that the defendant’s claims of abuse of process and malicious prosecution were preempted by federal bankruptcy law.
 
 Id.
 
 at 123. Thus,
 
 *191
 
 the court addressed “whether federal remedies . . . preempted] the
 
 state law causes of action
 
 alleged in the counterclaim.”
 
 Id.
 
 (emphasis added). In ruling that the state-law causes of action were preempted, the court stated:
 

 Because Congress has the constitutional power to preempt state law, ... as well as the constitutional power to enact laws governing bankruptcies, ... a number of courts have concluded that, by enacting the Bankruptcy Code, Congress has preempted some state activity on matters affecting bankruptcy. ... On the other hand, because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system,
 
 it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court.
 
 “Where the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying non-bankruptcy law.” . . . Remedies and sanctions for improper behavior and filings in bankruptcy court, however, are matters on which the Bankruptcy Code is far from silent and on which uniform rules are particularly important.
 
 [Id.
 
 at 123-124 (citations omitted; emphasis added).]
 

 The court discussed the two specific sections of the Bankruptcy Code, 11 USC 101
 
 et seq.,
 
 pertinent to the case, including 11 USC 303(i), the statutory subsection that addresses sanctions against creditors who file involuntary petitions in bad faith, and 11 USC 362(h), which addresses individuals who are injured by violations of an automatic stay. In addition, it noted:
 

 [T]he Bankruptcy Code contains numerous other provisions directed toward regulating the use of the bankruptcy process and the conduct of the parties in bankruptcy court. For example, 11 USC § 105(a) provides that the court “may
 
 *192
 
 issue any order, process, or judgment that is necessary or appropriate ... to prevent an abuse of process." Other remedies include 11 USC § 727(a)(4)(B), which authorizes a denial of discharge for presenting fraudulent claims, Rule 1008 of the Federal Rules of Bankruptcy Procedure, which requires filings to “be verified or contain an unsworn declaration” of truthfulness under penalty of perjury, and Rule 9011, which authorizes sanctions for signing certain documents not “well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.”
 
 [Id.
 
 at 124.]
 

 While indicating that the Bankruptcy Code and bankruptcy rules include remedies and sanctions, the
 
 Koffman
 
 court explicitly determined that not all state court remedies are preempted:
 

 Although the Bankruptcy Code includes all the remedies described above, as well as others, these provisions, standing alone, are insufficient to imply congressional intent to preempt all state activity in the area. The mere existence of a detañed and extensive regulatory scheme does not by itself imply an intent to preempt state remedies. ... In addition, courts must consider whether there are “special features” which warrant preemption.
 
 [Id.
 
 at 125.]
 

 The court then concluded that there were special features that warranted the preemption of
 
 the common law causes of action. Id.
 
 (emphasis added). Specifically, the court noted that “allowing state law tort suits to go forward would prejudice the operation of the Bankruptcy Code in an impermissible manner. Parties could be deterred from exercising their rights in bankruptcy if, by filing a bankruptcy petition, they risk being faced with a state court lawsuit and liability for substantial damages.”
 
 Id.
 
 at 125-126. The
 
 Koffman
 
 court found the reasoning set forth in
 
 Gonzales
 
 
 *193
 

 v Parks,
 
 830 F2d 1033, 1035 (CA 9, 1987), to be persuasive.
 

 The
 
 [Gonzales]
 
 court reasoned that allowing such claims to go forward would result in a state court determining whether relief is justified under a federal law, in a federal court, on matters within the federal court’s exclusive jurisdiction. . . . State courts would develop standards as to when persons could properly seek relief in federal court for claims which Congress has specifically precluded the state courts from adjudicating themselves.
 
 [Koffman, supra
 
 at 125.]
 

 In
 
 Gonzales, supra,
 
 the defendant filed a state court action for abuse of process
 
 after the plaintiff had filed for bankruptcy and the automatic stay was in place.
 
 The abuse of process action was also decided by the trial court while the automatic stay was in place. The appellate court ruled that the abuse of process action was preempted. In doing so, it indicated that state courts áre not authorized to determine whether a claim fpr relief in the bankruptcy court is appropriate.
 
 Id.
 
 at 1035. The trial court usurped the authority of the bankruptcy court by ruling that the ongoing bankruptcy petition was filed in bad faith and had no merit. In ruling on the preemption issue, the
 
 Gonzales
 
 court was concerned with the possibility of substantial damage awards being rendered against debtors for abuse of process.
 
 Id.
 
 at 1036. And, it stressed that the “mere possibility of being sued in tort in state court could deter people from exercising their rights.”
 
 Id.
 
 at 1036. See also
 
 MSR Exploration, Ltd v Meridian Oil, Inc,
 
 74 F3d 910, 914 (CA 9, 1996) (malicious prosecution actions are preempted).
 

 
 *194
 
 This case is unlike
 
 Gonzales, supra, Koffman, supra,
 
 or
 
 MSR Exploration, supra,
 
 in that plaintiff here did not file any cause of action against defendant for his misuse of the bankruptcy proceeding. Thus, there was no risk that substantial damages would be awarded against defendant for his conduct. The sole risk in this case was that defendant would have to pay the costs and attorney fees associated with his wrongful delay of the state court proceeding. This is a risk that all litigants, not only litigants who file for bankruptcy, take when they improperly interfere with trial court proceedings.
 

 In addition, the trial court, in this case, was not called on to adjudicate whether relief was justified for defendant under federal law. Rather, the bankruptcy court itself made the determination that defendant’s petition failed to comply with the necessary prerequisites. The trial court then decided that defendants improperly interfered with the state court proceeding and sanctioned the conduct accordingly. The trial court made findings of fact and concluded that defendants’ conduct was for the purpose of delaying the state court case and trying to obtain a nominal settlement. The trial court did not, unlike the state court in
 
 Gonzales, supta,
 
 usurp any authority of the bankruptcy court.
 
 [4]
 

 
 *195
 
 Moreover, no particular section of the Bankruptcy Code governs this case. There is no specific statute giving the bankruptcy court authority, and certainly not exclusive authority, to sanction a debtor for filing a petition solely in order to interfere with a state court proceeding. Thus, the Bankruptcy Code itself does not support defendant’s preemption argument. While Federal Rule of Bankruptcy Procedure 9011, the general sanction rule, does cover the situation, it is not determinative regarding the issue of preemption. FRBP 9011 gives the bankruptcy court authority to sanction a debtor, such as defendant, for numerous things, including filing petitions for improper purposes, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Nevertheless, that rule, standing alone, is insufficient to support defendant’s preemption argument.
 
 Koffman, supra
 
 at 125. And, there are no “special features” to support that Congress intended to preempt our state court’s right to sanction defendant MacDonald for improperly interfering with the underlying action.
 

 We also note that there is case law to support that a court, other than a bankruptcy court, may sanction a litigant for utilizing a bankruptcy petition to forestall pending litigation. See
 
 Roberts v Heim,
 
 184 Bankr 814, 822 (ND, Cal, 1995), where the district court determined that defendant TexOil’s filing of a bankruptcy petition was done in bad faith and constituted an “abusive litigation practice.” It made the determination that TexOil filed the collateral ;bank
 
 *196
 
 ruptcy proceeding in order to avoid the district court’s adverse ruling on a default motion brought by the plaintiffs.
 
 Id.
 
 at 819-820. Accordingly, the district court, not the bankruptcy court, sanctioned the defendant.
 

 There is no valid reason to prohibit our state courts from sanctioning a defendant for intentionally using a collateral proceeding to delay a trial or try to force a nominal settlement. The congressional purpose of allowing the bankruptcy court to sanction litigants for misusing the bankruptcy process would not be frustrated by allowing a state court to maintain its authority to sanction litigants for purposefully interfering with pending state court actions, even if the interference is through the use of a defective bankruptcy petition. We emphasize that the validity of the petition in this case was determined by the bankruptcy court itself, which administratively dismissed it because of its numerous deficiencies. We affirm the award of sanctions.
 

 We also affirm the evidentiary rulings of the trial court with respect to plaintiff’s religious discrimination claim. We do so because plaintiff has abandoned these issues on appeal. She argues that excluded evidence was relevant to demonstrate defendant’s predisposition to discriminate on the basis of religion and was relevant to the issue of constructive discharge. Thus, she concludes that because the evidence was relevant, it should have been admitted. Her argument completely fails to take into account and address that the trial court excluded the evidence at issue on grounds other than relevance. Specifically, the trial court excluded a letter from defendant MacDonald to a former shareholder on the grounds that
 
 *197
 
 the evidence was more prejudicial than probative. With regard to testimony about another religious discrimination lawsuit, it appears that the trial court excluded it on the ground that plaintiff had failed to plead that she was discriminated against as part of a pattern of discrimination and because the “fact that somebody else files a lawsuit” is not probative of the matter. Finally, the trial court excluded testimony about defendant’s views and the views of born-again Christians regarding the role of women. It did so because defendant had not filed a gender discrimination claim and the issue was more appropriate for a gender claim.
 

 It is axiomatic that where a party fails to brief the merits of an allegation of error, the issue is deemed abandoned by this Court. See
 
 In re JS & SM,
 
 231 Mich App 92, 98; 585 NW2d 326 (1998);
 
 People v Kent,
 
 194 Mich App 206, 209-210; 486 NW2d 110 (1992). And, where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.
 
 Schellenberg v Rochester Elks,
 
 228 Mich App 20, 49; 577 NW2d 163 (1998). Because plaintiff has failed to address the merits of the trial court’s evidentiary rulings and offer support for her position, the issues raised in her cross appeal with regard to the religious discrimination claim are abandoned.
 

 Affirmed.
 

 [1]
 

 Defendant MacDonald & Goren, P.C., does not have an appeal pending before this Court at this time.
 

 [2]
 

 This Court has not been provided with any transcripts from the bankruptcy court proceedings. Thus, this Court is not able to determine why the bankruptcy court denied the motion.
 

 [3]
 

 We note that defendant does not take issue with the trial court’s finding that he did, in fact, engage in litigant misconduct.
 

 [4]
 

 In making this determination, we are mindful that the trial court made explicit findings regarding the issue of bad faith and the issue whether defendant MacDonald & Goren, P.C., needed bankruptcy protection. We do not believe, however, that these explicit findings of fact usurped the bankruptcy court’s authority or warrant a finding that the state court took action that is preempted by bankruptcy law. We do so because even though the trial court went into great detail concerning how the bankruptcy process was abused by defendants, it did not have to in order to support an award of sanctions. The bankruptcy court’s finding that the petition was faulty, along with the fact that defendants made no attempts
 
 *195
 
 to rectify the deficiencies and along with the fact that the bankruptcy was timed to interfere with the trial date and used to try to reach a nominal settlement, was sufficient to support the award of sanctions.